

**STATE OF NEW YORK**
**OFFICE OF THE ATTORNEY GENERAL**

| | | |
|---|---|---|
| ELIOT SPITZER<br>Attorney General | Writer Direct: (518) 473-6288<br>March 5, 2002 | STATE COUNSEL DIVISION<br>LITIGATION BUREAU |

Hon. David R. Homer
United States District Court
C/O Inmate Litigation
P.O. Box 7367
100 South Clinton Street
Syracuse, New York 13261-7367



U.S. DISTRICT COURT — N.D.
FILED
MAR 0 8 2002
AT_____ O'CLOCK_____
Lawrence K. Baerman, Clerk — Syracuse

Re:   *Villante v VanDyke*
       Northern District of New York
       99-CV-830 (LEK)(DRH)

Dear Judge Homer:

In light of the recent decision by the United States Supreme Court in *Porter v. Nussle,* 2002 U.S. Lexis 1373, February 26, 2002 ( a copy attached hereto for the convenience of the court), which requires exhaustion of all inmate claims and represents a change in the law in this Circuit, defendants herein respectfully request leave to make a summary judgment motion in the above action on the exhaustion issue. A review of the file indicates that plaintiff failed to exhaust administrative remedies.

Thank you very much for your consideration of this matter.

Granted: ✓
Denied: ____

IT IS SO ORDERED

Albany, New York
Dated: 4-8-02

Lawrence E. Kahn
United States District Judge

Respectfully yours,

Roger W. Kinsey
Assistant Attorney General
Bar Roll No. 508171

Enclosure

March 5, 2002
Page 2


cc:     Dean J. Villante
        92-A-3786
        Wende Correctional Facility
        P.O. Box 1187
        Alden, New York  14004-1187

*2002 U.S. LEXIS 1373, \**

CORRECTION OFFICER PORTER, ET AL., PETITIONERS v. RONALD **NUSSLE**

No. 00-853

SUPREME COURT OF THE UNITED STATES

2002 U.S. LEXIS 1373

January 14, 2002, Argued
**February** 26, 2002, Decided

**NOTICE:** [\*1]  This preliminary LEXIS version is unedited and subject to revision.

The LEXIS pagination of this document is subject to change pending release of the final published version.

**PRIOR HISTORY:** ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT.

**DISPOSITION:** 224 F.3d 95, reversed and remanded.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Respondent state inmate brought an action against petitioner corrections officers under 42 U.S.C.S. § 1983, alleging that the officers assaulted him. Upon the grant of a writ of certiorari, the officers appealed the judgment of the United States Court of Appeals for the Second Circuit which reversed the district court's decision that required the inmate to exhaust his administrative remedies prior to pursuing the action.

**OVERVIEW:** The inmate contended that 42 U.S.C.S. § 1997e(a), which required exhaustion of available administrative remedies in actions by prisoners with respect to prison conditions, did not apply to the inmate's action concerning a single incident of the use of excessive force. The officers asserted that the inmate's failure to pursue his claim through the prison grievance procedure precluded his action. The United States Supreme Court held that the exhaustion requirement applied to all prisoners seeking redress for prison conditions or occurrences, regardless of whether the claim involved general circumstances or a particular episode. The term "prison conditions," when read in its proper statutory context, did not intend to make a distinction between conditions affecting prisoners generally and single incidents that immediately affected only a particular prisoner. The statute's predominant concerns were to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court, and such concerns required the inmate to exhaust his administrative remedies prior to bringing his action concerning prison life.

**OUTCOME:** The judgment of the appellate court was reversed, and the case was remanded for further proceedings.

**CORE TERMS:** prison, prisoner, excessive force, exhaustion, grievance, correction, conditions of confinement, exhaustion requirement, inmate, challenging, frivolous, episode, beating, administrative remedies, exhausted, assault, guard, general rule, harassment, exhaust, urge, nonconsensual, prescription, occurrence, brutality, isolated, contours, ongoing, resort, filter

**CORE CONCEPTS** - Hide Concepts

Criminal Law & Procedure : Postconviction Proceedings : Prison Litigation Reform Act
 See 42 U.S.C.S. § 1997e(a).

Criminal Law & Procedure : Postconviction Proceedings : Prison Litigation Reform Act
 The exhaustion requirement of 42 U.S.C.S. § 1997e(a) applies to all prisoners seeking redress for prison circumstances or occurrences.

Criminal Law & Procedure : Postconviction Proceedings : Imprisonment & Prisoner Rights

The Connecticut Department of Correction provides a grievance system for prisoners. Under that system, grievances must be filed within 30 days of the occurrence. Rules governing the grievance process include provisions on confidentiality and against reprisals.

Constitutional Law : Civil Rights Enforcement : Civil Rights Act of 1871
Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C.S. § 1983 need not exhaust administrative remedies before filing suit in court.

Criminal Law & Procedure : Postconviction Proceedings : Prison Litigation Reform Act
Once within the discretion of the district court, exhaustion of administrative remedies in cases covered by 42 U.S.C.S. § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. And unlike the previous provision, which encompassed only 42 U.S.C.S. § 1983 suits, exhaustion is now required for all actions brought with respect to prison conditions, whether under § 1983 or any other federal law. Thus federal prisoners bringing a Bivens action must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit.

Criminal Law & Procedure : Postconviction Proceedings : Prison Litigation Reform Act
42 U.S.C.S. § 1997e(a) mandates initial recourse to the prison grievance process even when a prisoner seeks only money damages, a remedy not available in that process.

Civil Procedure : Magistrates : Pretrial Orders
Criminal Law & Procedure : Postconviction Proceedings : Imprisonment & Prisoner Rights
See 28 U.S.C.S. § 636(b)(1)(B.

Governments : Legislation : Construction & Interpretation
The title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.

Governments : Legislation : Construction & Interpretation
The United States Supreme Court generally presumes that Congress expects its statutes to be read in conformity with the Supreme Court's precedents.

Criminal Law & Procedure : Postconviction Proceedings : Imprisonment & Prisoner Rights
Since the internal problems of state prisons involve issues so peculiarly within state authority and expertise, the states have an important interest in not being bypassed in the correction of those problems.

Criminal Law & Procedure : Postconviction Proceedings : Prison Litigation Reform Act
The exhaustion requirement of the Prison Litigation Reform Act of 1995 applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

**SYLLABUS:** Without filing a grievance under applicable Connecticut Department of Correction procedures, plaintiff-respondent **Nussle,** a state prison inmate, commenced a federal court action under 42 U.S.C. § 1983, charging that corrections officers, including defendant-petitioner Porter, had subjected him to a sustained pattern of harassment and intimidation and had singled him out for a severe beating in violation of the Eighth Amendment's ban on "cruel and unusual punishments." The District Court dismissed **Nussle's** suit, relying on a provision of the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e [*2] (a), that directs: "No action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." The Second Circuit reversed, holding that exhaustion of administrative remedies is not required for a claim of the kind **Nussle** asserted. The appeals court concluded that § 1997e(a)'s "prison conditions" phrase covers only conditions affecting prisoners generally, not single incidents that immediately affect only particular prisoners, such as corrections officers' use of excessive force. In support of its position, the court cited legislative history suggesting that the PLRA curtails frivolous suits, not actions seeking relief from corrections officer brutality; the court also referred to pre-PLRA decisions in which this Court distinguished, for proof of injury and *mens rea* purposes, between excessive force claims and conditions of confinement

claims.

*Held:* The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other [*3] wrong. Cf. *Wilson* v. *Seiter,* 501 U.S. 294, 299, n. 1. Pp. 5-14, 115 L. Ed. 2d 271, 111 S. Ct. 2321.

(a) The current exhaustion provision in § 1997e(a) differs markedly from its predecessor. Once within the district court's discretion, exhaustion in § 1997e(a) cases is now mandatory. See *Booth* v. *Churner,* 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958. And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all "actions . . . brought with respect to prison conditions." Section 1997e(a), designed to reduce the quantity and improve the quality of prisoner suits, affords corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. *Id.,* at 737. In other instances, the internal review might filter out some frivolous claims. *Ibid.* And for cases ultimately brought to court, an administrative record clarifying the controversy's contours could facilitate adjudication. See, *e.g., ibid.* Pp. 5-7.

(b) [*4] Determination of the meaning of § 1997e(a)'s "prison conditions" phrase is guided by the PLRA's text and context, and by this Court's prior decisions relating to "suits by prisoners," as § 1997e is titled. The pathmarking opinion is *McCarthy* v. *Bronson,* 500 U.S. 136, 114 L. Ed. 2d 194, 111 S. Ct. 1737, in which the Court construed the Federal Magistrates Act's authorization to district judges to refer "prisoner petitions challenging conditions of confinement" to magistrate judges. This Court concluded in *McCarthy* that, read in its proper context, the phrase "challenging conditions of confinement" authorizes the nonconsensual reference of *all* prisoner petitions to a magistrate, *id.,* at 139. The *McCarthy* Court emphasized that *Preiser* v. *Rodriguez,* 411 U.S. 475, 36 L. Ed. 2d 439, 93 S. Ct. 1827, had unambiguously placed cases involving single episodes of unconstitutional conduct within the broad category of prisoner petitions challenging conditions of confinement, 500 U.S. at 141; found it telling that Congress, in composing the Magistrates Act, chose language that so clearly paralleled the *Preiser* opinion, 500 U.S. at 142; and considered it significant [*5] that the latter Act's purpose -- to lighten overworked district judges' caseload -- would be thwarted by allowing satellite litigation over the precise contours of an exception for single episode cases, *id.,* at 143. The general presumption that Congress expects its statutes to be read in conformity with this Court's precedents, *United States* v. *Wells,* 519 U.S. 482, 495, 137 L. Ed. 2d 107, 117 S. Ct. 921, and the PLRA's dominant concern to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court, see *Booth* v. *Churner,* 532 U.S. at 737, persuade the Court that § 1997e(a)'s key words "prison conditions" are properly read through the lens of *McCarthy* and *Preiser.* Those decisions tug strongly away from classifying suits about prison guards' use of excessive force, one or many times, as anything other than actions "with respect to prison conditions." **Nussle** misplaces principal reliance on *Hudson* v. *McMillian,* 503 U.S. 1, 8-9, 117 L. Ed. 2d 156, 112 S. Ct. 995, and *Farmer* v. *Brennan,* 511 U.S. 825, 835-836, 128 L. Ed. 2d 811, 114 S. Ct. 1970. Although those cases did distinguish excessive force claims from conditions of [*6] confinement claims, they did so in the context of proof requirements: what injury must a plaintiff allege and show; what mental state must a plaintiff plead and prove. Proof requirements, once a case is in court, however, do not touch or concern the threshold inquiry at issue here: whether resort to a prison grievance process must precede resort to a court. There is no reason to believe that Congress meant to release the evidentiary distinctions drawn in *Hudson* and *Farmer* from their moorings and extend their application to § 1997e(a)'s otherwise invigorated exhaustion requirement. It is at least equally plausible that Congress inserted "prison conditions" into the exhaustion provision simply to make it clear that preincarceration claims fall outside § 1997e(a), for example, a § 1983 claim against the prisoner's arresting officer. Furthermore, the asserted distinction between excessive force claims and exhaustion-mandatory "frivolous" claims is untenable, for excessive force claims can be frivolous, and exhaustion serves purposes beyond weeding out frivolous allegations. Pp. 7-12.

(c) Other infirmities inhere in the Second Circuit's disposition. See *McCarthy,* 500 U.S. at 143. [*7] In the prison environment, a specific incident may be symptomatic of a systemic problem, rather than aberrational. *Id.,* at 143-144. **Nussle** urges that his case could be placed in the isolated episode category, but he might equally urge that his complaint describes a pattern or practice of harassment climaxing in the alleged beating. It seems unlikely that Congress, when it included in the PLRA a firm exhaustion requirement, meant to leave the need to exhaust to the pleader's option. Cf. *Preiser,* 411 U.S. at 489-490. Moreover, the appeals court's disposition augurs complexity; bifurcated proceedings would be normal thereunder when, for example, a prisoner sues both the corrections officer alleged to have used excessive force and the supervisor who allegedly failed adequately to monitor those in his charge. Finally, scant sense supports the single occurrence, prevailing circumstance dichotomy. For example, prison authorities' interest

in receiving prompt notice of, and opportunity to take action against, guard brutality is no less compelling than their interest in receiving notice and an opportunity to stop other types of staff wrongdoing. See *id.,* at 492. [*8] Pp. 12-14.

224 F.3d 95, reversed and remanded.

**JUDGES:** GINSBURG, J., delivered the opinion for a unanimous Court.

**OPINIONBY:** GINSBURG

**OPINION:** JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the obligation of prisoners who claim denial of their federal rights while incarcerated to exhaust prison grievance procedures before seeking judicial relief. Plaintiff-respondent Ronald **Nussle,** an inmate in a Connecticut prison, brought directly to court, without filing an inmate grievance, a complaint charging that corrections officers singled him out for a severe beating, in violation of the Eighth Amendment's ban on "cruel and unusual punishments." **Nussle** bypassed the grievance procedure despite a provision of the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-73, as amended, 42 U.S.C. § 1997e(a) (1994 ed., Supp. V), that directs: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The Court of Appeals for the Second [*9] Circuit held that § 1997e(a) governs only conditions affecting prisoners generally, not single incidents, such as corrections officers' use of excessive force, actions that immediately affect only particular prisoners. **Nussle** defends the Second Circuit's judgment, but urges that the relevant distinction is between excessive force claims, which, he says, need not be pursued administratively, and all other claims, which, he recognizes, must proceed first through the prison grievance process. We reject both readings and hold, in line with the text and purpose of the PLRA, our precedent in point, and the weight of lower court authority, that § 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences.

I

Respondent Ronald **Nussle** is an inmate at the Cheshire Correctional Institution in Connecticut. App. 38. According to his complaint, corrections officers at the prison subjected him to "a prolonged and sustained pattern of harassment and intimidation" from the time of his arrival there in May 1996. *Id.,* at 39. **Nussle** alleged that he was singled out because he was "perceived" to be a friend of the Governor of Connecticut, with [*10] whom corrections officers were feuding over labor issues. *Ibid.*

*Concerning the episode in suit,* **Nussle** *asserted that, on or about June 15, 1996, several officers, including defendant-petitioner Porter, ordered* **Nussle** *to leave his cell, "placed him against a wall and struck him with their hands, kneed him in the back, [and] pulled his hair." Ibid.* **Nussle** alleged that the attack was unprovoked and unjustified, and that the officers told him they would kill him if he reported the beating. *Ibid.*

Then, as now, the Connecticut Department of Correction provided a grievance system for prisoners. See *id.,* at 5-18. Under that system, grievances must be filed within 30 days of the "occurrence." *Id.,* at 11. Rules governing the grievance process include provisions on confidentiality and against reprisals. *Id.,* at 17-18.

Without filing a grievance, on June 10, 1999, **Nussle** commenced an action in federal district court under 42 U.S.C. § 1983; he filed suit days before the three-year statute of limitations ran out on the § 1983 claim. n1 **Nussle** charged, principally, that the corrections officers' assault violated his right to be free from [*11] cruel and unusual punishment under the Eighth Amendment, as made applicable to the States by the Fourteenth Amendment. App. 38. The District Court, relying on § 1997e(a), dismissed **Nussle's** complaint for failure to exhaust administrative remedies. **Nussle** v. *Willette,* 3:99CV1091(AHN) (D Conn., Nov. 22, 1999), App. 43.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 The Second Circuit has held that § 1983 actions in Connecticut are governed by that State's three-year statute of limitations for tort actions. *Williams* v. *Walsh,* 558 F.2d 667, 670 (1977).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Construing § 1997e(a) narrowly because it is an exception "to the general rule of non-exhaustion in § 1983 cases," the Court of Appeals for the Second Circuit reversed the District Court's judgment; the appeals court held that "exhaustion of administrative remedies is not required for [prisoner] claims of assault or excessive force brought under § 1983." *Nussle* v. *Willette*, 224 F.3d 95, 106 (2000). Section 1997e(a) requires administrative exhaustion of [*12] inmates' claims "with respect to prison conditions," but contains no definition of the words "prison conditions." The appeals court found the term "scarcely free of ambiguity." *Id.*, at 101. n2 For purposes of the PLRA's exhaustion requirement, the court concluded, the term was most appropriately read to mean "'circumstances affecting everyone in the area,'" rather than "'single or momentary matters,' such as beatings . . . directed at particular individuals." *Ibid.* (quoting *Booth* v. *Churner*, 206 F.3d 289, 300-301 (CA3 2000) (Noonan, J., concurring and dissenting), aff'd on other grounds, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001)).

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 Another provision of the PLRA, 18 U.S.C. § 3626(g)(2) (1994 ed., Supp. V), the court observed, does define "prison conditions." *Nussle* v. *Willette*, 224 F.3d 95, 101 (CA2 2000). That provision, which concerns prospective relief, defines "prison conditions" to mean "the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." The Second Circuit found the § 3626(g)(2) definition "no less ambiguous" than the bare text of § 1997e(a). Neither of the alternative § 3626(g)(2) formulations, the court said, would be used in "everyday" speech to describe "particular instances of assault or excessive force." *Id.*, at 102. But see *Booth* v. *Churner*, 206 F.3d 289, 294-295 (CA3 2000), aff'd on other grounds, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) (reading § 3626(g)(2) to cover all prison conditions and corrections officer actions that "make [prisoners'] lives worse"). The Second Circuit ultimately concluded that it would be improper, in any event, automatically to import § 3626(g)(2)'s "definition of 'civil actions brought with respect to prison conditions' into 42 U.S.C. § 1997e(a)" because the two provisions had "distinct statutory purposes." 224 F.3d at 105.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - [*13]

The Court of Appeals found support for its position in the PLRA's legislative history. Floor statements "overwhelmingly suggested" that Congress sought to curtail suits qualifying as "frivolous" because of their "subject matter," *e.g.*, suits over "insufficient storage locker space," "a defective haircut," or "being served chunky peanut butter instead of the creamy variety." 224 F.3d at 105 (internal quotation marks omitted). Actions seeking relief from corrections officer brutality, the Second Circuit stressed, are not of that genre. Further, the Court of Appeals referred to pre-PLRA decisions in which this Court had "disaggregated the broad category of Eighth Amendment claims so as to distinguish [for proof of injury and *mens rea* purposes] between 'excessive force' claims, on the one hand, and 'conditions of confinement' claims, on the other." *Id.*, at 106 (citing *Hudson* v. *McMillian*, 503 U.S. 1, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992), and *Farmer* v. *Brennan*, 511 U.S. 825, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994)).

In conflict with the Second Circuit, other Federal Courts of Appeals have determined that prisoners alleging assaults by prison guards must meet § 1997e(a)'s [*14] exhaustion requirement before commencing a civil rights action. See *Smith* v. *Zachary*, 255 F.3d 446 (CA7 2001); *Higginbottom* v. *Carter*, 223 F.3d 1259 (CA11 2000); *Booth* v. *Churner*, 206 F.3d 289 (CA3 2000); *Freeman* v. *Francis*, 196 F.3d 641 (CA6 1999). We granted certiorari to resolve the intercircuit conflict, 532 U.S. 1065 (2001), and now reverse the Second Circuit's judgment.

II

Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court. See *Patsy* v. *Board of Regents of Fla.*, 457 U.S. 496, 516, 73 L. Ed. 2d 172, 102 S. Ct. 2557 (1982). Prisoner suits alleging constitutional deprivations while incarcerated once fell within this general rule. See *Wilwording* v. *Swenson*, 404 U.S. 249, 251, 30 L. Ed. 2d 418, 92 S. Ct. 407 (1971) *(per curiam)*.

In 1980, however, Congress introduced an exhaustion prescription for suits initiated by state prisoners. See Civil Rights of Institutionalized Persons Act, 94 Stat. 352, as amended, 42 U.S.C. § 1997e (1994 ed.). This measure authorized district [*15] courts to stay a state prisoner's § 1983 action "for a period not to exceed 180 days" while the prisoner exhausted available "plain, speedy, and effective administrative remedies." §

1997e(a)(1). Exhaustion under the 1980 prescription was in large part discretionary; it could be ordered only if the State's prison grievance system met specified federal standards, and even then, only if, in the particular case, the court believed the requirement "appropriate and in the interests of justice." §§ 1997e(a) and (b). We described this provision as a "limited exhaustion requirement" in *McCarthy* v. *Madigan*, 503 U.S. 140, 150-151, 117 L. Ed. 2d 291, 112 S. Ct. 1081 (1992), and thought it inapplicable to prisoner suits for damages when monetary relief was unavailable through the prison grievance system.

In 1995, as part of the PLRA, Congress invigorated the exhaustion prescription. The revised exhaustion provision, titled "Suits by prisoners," states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. [*16] " 42 U.S.C. § 1997e(a) (1994 ed., Supp. V).

The current exhaustion provision differs markedly from its predecessor. Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. See *Booth* v. *Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). All "available" remedies must now be exhausted; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." See *ibid.*; see also *id.*, at 740, n. 5. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. See *id.*, at 741. And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all "actions . . . brought with respect to prison conditions," whether under § 1983 or "any other Federal law." Compare 42 U.S.C. § 1997e (1994 ed.) with 42 U.S.C. § 1997e(a) (1994 ed., Supp. V). Thus federal prisoners suing under *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971), must first exhaust inmate grievance [*17] procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit.

Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. *Booth*, 532 U.S. at 737. In other instances, the internal review might "filter out some frivolous claims." *Ibid.* And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy. See *ibid.*; see also *Madigan*, 503 U.S. at 146.

Congress described the cases covered by § 1997e(a)'s exhaustion requirement as "actions . . . brought with respect to prison conditions." **Nussle's** case requires us to determine what the § 1997e(a) term "prison conditions" means, given Congress' failure to define the term in the [*18] text of the exhaustion provision. n3 We are guided in this endeavor by the PLRA's text and context, and by our prior decisions relating to "suits by prisoners," § 1997e. n4

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n3 The parties dispute the meaning of a simultaneously enacted provision, § 3626(g)(2), which concerns prospective relief, and for that purpose, defines the expression "civil action with respect to prison conditions." See *supra*, at 3, n. 2 (noting, *inter alia*, divergent constructions of Second and Third Circuits). We rest our decision on the meaning of "prison conditions" in the context of § 1997e, and express no definitive opinion on the proper reading of § 3626(g)(2).

n4 In reaching its decision, the Second Circuit referred to its "obligation to construe statutory exceptions narrowly, in order to give full effect to the general rule of non-exhaustion in § 1983." 224 F.3d at 106 (citing *City of Edmonds* v. *Oxford House, Inc.*, 514 U.S. 725, 731-732, 131 L. Ed. 2d 801, 115 S. Ct. 1776 (1995), and *Patsy* v. *Board of Regents of Fla.*, 457 U.S. 496, 508, 73 L. Ed. 2d 172, 102 S. Ct. 2557 (1982)). The Second Circuit did not then have available to it our subsequently rendered decision in *Booth* v. *Churner*, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). *Booth* held that § 1997e(a) mandates initial recourse to the prison grievance process even when a prisoner seeks only money damages, a remedy not available in that process. See *id.*, at 741. In so ruling, we observed that "Congress . . . may well have thought we were shortsighted" in failing adequately to recognize the utility of the administrative process to satisfy, reduce, or clarify prisoner grievances. *Id.*, at 737. While the canon on which the Second Circuit relied may be dependable in other contexts, the PLRA establishes a different regime. For litigation within § 1997e(a)'s compass, Congress has replaced the "general rule of non-exhaustion" with a general rule of exhaustion.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - [*19]

As to precedent, the pathmarking opinion is *McCarthy* v. *Bronson,* 500 U.S. 136, 114 L. Ed. 2d 194, 111 S. Ct. 1737 (1991), which construed 28 U.S.C. § 636(b)(1)(B) (1988 ed.), a Judicial Code provision authorizing district judges to refer to magistrate judges, *inter alia,* "prisoner petitions challenging conditions of confinement." n5 The petitioning prisoner in *McCarthy* argued that § 636(b)(1)(B) allowed nonconsensual referrals "only when a prisoner challenges ongoing prison conditions." 500 U.S. at 138. The complaint in *McCarthy* targeted no "ongoing prison conditions"; it homed in on "an isolated incident" of excessive force. *Ibid.* For that reason, according to the *McCarthy* petitioner, nonconsensual referral of his case was impermissible. *Id.,* at 138-139.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n5 Title 28 U.S.C. § 636(b)(1)(B) provides in relevant part:

"(b)(1) Notwithstanding any provision of law to the contrary --

. . . . .

"a judge may . . . designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, . . . of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement."

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - [*20]

We did not "quarrel with" the prisoner's assertion in *McCarthy* that "the most natural reading of the phrase 'challenging conditions of confinement,' when viewed in isolation, would not include suits seeking relief from isolated episodes of unconstitutional conduct." *Id.,* at 139. We nonetheless concluded that the petitioner's argument failed upon reading the phrase "in its proper context." *Ibid.* We found no suggestion in § 636(b)(1)(B) that Congress meant to divide prisoner petitions "into subcategories." *Ibid.* "On the contrary," we observed, "when the relevant section is read in its entirety, it suggests that Congress intended to authorize the nonconsensual reference of *all* prisoner petitions to a magistrate." *Ibid.* The Federal Magistrates Act, we noted, covers actions of two kinds: challenges to "conditions of confinement"; and "applications for habeas corpus relief." *Id.,* at 140. Congress, we concluded, "intended to include in their entirety those two primary categories of suits brought by prisoners." *Ibid.*

"Just three years before [ § 636(b)(1)(B)] was drafted," we explained in *McCarthy,* "our opinion in *Preiser* v. *Rodriguez,* 411 U.S. 475, 36 L. Ed. 2d 439, 93 S. Ct. 1827 (1973), [*21] had described [the] two broad categories of prisoner petitions: (1) those challenging the fact or duration of confinement itself; and (2) those challenging the conditions of confinement." *Ibid. Preiser* v. *Rodriguez,* 411 U.S. 475, 36 L. Ed. 2d 439, 93 S. Ct. 1827 (1973), left no doubt, we further stated in *McCarthy,* that "the latter category unambiguously embraced the kind of single episode cases that petitioner's construction would exclude." 500 U.S. at 141. We found it telling that Congress, in composing the Magistrates Act, chose language "that so clearly paralleled our *Preiser* opinion." 500 U.S. at 142. We considered it significant as well that the purpose of the Magistrates Act -- to lighten the caseload of overworked district judges -- would be thwarted by opening the door to satellite litigation over "the precise contours of [the] suggested exception for single episode cases." *Id.,* at 143.

As in *McCarthy,* we here read the term "prison conditions" not in isolation, but "in its proper context." *Id.,* at 139. The PLRA exhaustion provision is captioned "Suits by prisoners," see § 1997e; this unqualified heading scarcely [*22] aids the argument that Congress meant to bisect the universe of prisoner suits. See *ibid.*; see also *Almendarez-Torres* v. *United States,* 523 U.S. 224, 234, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998) ("The title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (internal quotation marks omitted)).

This Court generally "presumes that Congress expects its statutes to be read in conformity with the Court's precedents." *United States* v. *Wells,* 519 U.S. 482, 495, 137 L. Ed. 2d 107, 117 S. Ct. 921 (1997). That presumption, and the PLRA's dominant concern to promote administrative redress, filter out groundless

claims, and foster better prepared litigation of claims aired in court, see *Booth*, 532 U.S. at 737, persuade us that § 1997e(a)'s key words "prison conditions" are properly read through the lens of *McCarthy* and *Preiser*. Those decisions tug strongly away from classifying suits about prison guards' use of excessive force, one or many times, as anything other than actions "with respect to prison conditions."

**Nussle** places principal reliance on *Hudson* v. *McMillian*, 503 U.S. 1, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992), and *Farmer* v. *Brennan*, 511 U.S. 825, 835-836, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994), **[*23]** and the Second Circuit found support for its position in those cases as well, 224 F.3d at 106. *Hudson* held that to sustain a claim of excessive force, a prisoner need not show significant injury. 503 U.S. at 9. In so ruling, the Court did indeed distinguish excessive force claims from "conditions of confinement" claims; to sustain a claim of the latter kind "significant injury" must be shown. *Id.*, at 8-9. *Hudson* also observed that a "conditions of confinement" claim may succeed if a prisoner demonstrates that prison officials acted with "deliberate indifference," *id.*, at 8 (citing *Wilson* v. *Seiter*, 501 U.S. 294, 298, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991)), while a prisoner alleging excessive force must demonstrate that the defendant acted "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. *Farmer* similarly distinguished the mental state that must be shown to prevail on an excessive force claim, *i.e.*, "purposeful or knowing conduct," from the lesser *mens rea* requirement governing "conditions of confinement" claims, *i.e.*, "deliberate indifference." 511 U.S. at 835-836. **[*24]** We do not question those decisions and attendant distinctions in the context in which they were made. But the question presented here is of a different order.

*Hudson* and *Farmer* trained solely and precisely on proof requirements: what injury must a plaintiff allege and show; what mental state must a plaintiff plead and prove. Proof requirements once a case is in court, however, do not touch or concern the threshold inquiry before us: whether resort to a prison grievance process must precede resort to a court. We have no reason to believe that Congress meant to release the evidentiary distinctions drawn in *Hudson* and *Farmer* from their moorings and extend their application to the otherwise invigorated exhaustion requirement of § 1997e(a). Such an extension would be highly anomalous given Congress' elimination of judicial discretion to dispense with exhaustion and its deletion of the former constraint that administrative remedies must be "plain, speedy, and effective" before exhaustion could be required. See *supra*, at 6; *Booth*, 532 U.S. at 739; cf. *id.*, at 740-741 ("Congress's imposition of an obviously broader exhaustion requirement **[*25]** makes it highly implausible that it meant to give prisoners a strong inducement to skip the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms.").

**Nussle** contends that Congress added the words "prison conditions" to the text of § 1997e(a) specifically to exempt excessive force claims from the now mandatory exhaustion requirement; he sees that requirement as applicable mainly to "'prison conditions' claims that may be frivolous as to subject matter," 224 F.3d at 106. See Brief for Respondent 2, 26-27. It is at least equally plausible, however, that Congress inserted "prison conditions" into the exhaustion provision simply to make it clear that preincarceration claims fall outside § 1997e(a), for example, a Title VII claim against the prisoner's preincarceration employer, or, for that matter, a § 1983 claim against his arresting officer.

Furthermore, the asserted distinction between excessive force claims that need not be exhausted, on the one hand, and exhaustion-mandatory "frivolous" claims on the other, see *id.*, at 2, 26-27, is untenable, for "excessive force claims can be frivolous, **[*26]** " *Smith*, 255 F.3d at 452 ("Inmates can allege they were subject to vicious nudges."), and exhaustion serves purposes beyond weeding out frivolous allegations, see *supra*, at 6-7.

Other infirmities inhere in the Second Circuit's disposition. See *McCarthy*, 500 U.S. at 143 ("Petitioner's definition would generate additional work for the district courts because the distinction between cases challenging ongoing conditions and those challenging specific acts of alleged misconduct will often be difficult to identify."). As *McCarthy* emphasized, in the prison environment a specific incident may be symptomatic rather than aberrational. *Id.*, at 143-144. An unwarranted assault by a corrections officer may be reflective of a systemic problem traceable to poor hiring practices, inadequate training, or insufficient supervision. See *Smith*, 255 F.3d at 449. **Nussle** himself alleged in this very case not only the beating he suffered on June 15, 1996; he also alleged, extending before and after that date, "a prolonged and sustained pattern of harassment and intimidation by correction officers." App. 39. **Nussle** urges that his case **[*27]** could be placed in the isolated episode category, but he might equally urge that his complaint describes a pattern or practice of harassment climaxing in the alleged beating. It seems unlikely that Congress, when it included in the PLRA a firm exhaustion requirement, meant to leave the need to exhaust to the pleader's option. Cf. *Preiser*, 411 U.S. at 489-490 ("It would wholly frustrate explicit congressional intent to hold that [prisoners] could evade this [exhaustion] requirement by the simple expedient of putting a different label on their pleadings.").

Under **Nussle's** view and that of the Second Circuit, moreover, bifurcation would be normal when a prisoner sues both a corrections officer alleged to have used excessive force and the supervisor who allegedly failed adequately to monitor those in his charge. Tr. of Oral Arg. 31. The officer alone could be taken directly to court; the charge against the supervisor would proceed first through the internal grievance process. Similarly split proceedings apparently would be in order, under the Second Circuit's decision, when the prisoner elects to pursue against the same officers both discrete instance and ongoing [*28] conduct charges.

Finally, we emphasize a concern over and above the complexity augured by the Second Circuit's disposition: Scant sense supports the single occurrence, prevailing circumstance dichotomy. Why should a prisoner have immediate access to court when a guard assaults him on one occasion, but not when beatings are widespread or routine? See *Smith*, 255 F.3d at 450. **Nussle's** distinction between excessive force claims and all other prisoner suits, see supra, at 2, presents a similar anomaly. Do prison authorities have an interest in receiving prompt notice of, and opportunity to take action against, guard brutality that is somehow less compelling than their interest in receiving notice and an opportunity to stop other types of staff wrongdoing? See *Preiser*, 411 U.S. at 492 ("Since [the] internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems."). n6

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n6 Other provisions of § 1997e that refer to "prison conditions" would have less scope under the Second Circuit's construction of the term. Section 1997e(c)(1) provides for dismissal on the court's own initiative of "any action brought with respect to prison conditions" that is "frivolous [or] malicious." No specific incident complaint would be subject to that prescription under the view that such suits do not implicate "prison conditions." Further, § 1997e(f)(1) provides that pretrial proceedings in "any action brought with respect to prison conditions" may be held at the prison via telephone, video conference, or other telecommunications technology so that the prisoner need not be physically transferred to participate. Surely such arrangements would be appropriate in **Nussle's** case and others of its genre. But on what authority would these practical procedures rest if cases like **Nussle's** do not qualify as actions regarding "prison conditions"?

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - [*29]

\* \* \*

For the reasons stated, we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Cf. *Wilson,* 501 U.S. at 299, n.1. Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

Source: All Sources > Federal Legal - U.S. > Supreme Court Cases & Materials > **US Supreme Court Cases, Briefs, and Cases Preview**
Terms: **nussle and date geq (02/05/2002)**  (Edit Search)
View: Full
Date/Time: Tuesday, March 5, 2002 - 4:08 PM EST

About LexisNexis | Terms and Conditions

Copyright © 2002 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.